Good morning. May I please the court? My name is Pablo Cabrera. I'm attorney for the petitioner Maria Perez-Zenteno. As instructed, I'm going to go straight to the core of the argument. In our case, we're claiming that Ms. Perez-Zenteno is entitled to asylum because she was subject to past persecution. The past persecution in the facts of our case is that she was gang raped when she went after trying to rescue her daughter who had been kidnapped in Mexico. There is plenty of case law like Sanchez-Jimenez. I don't know if the court needs the quote, and the Santa Maria. We state that that type of extreme treatment amounts to persecution. As a matter of fact, Sanchez-Jimenez and the Santa Maria state that attempted murder is persecution. So what we consider to be the logical conclusion would be that if attempted, that type of extreme treatment amounts to persecution. The consummated fact of kidnapping and in Ms. Perez-Zenteno's particular case- I don't think that you have to argue, certainly don't have to convince me that the conduct is serious enough to fall into the rubric of persecution. The problem I think that you have, and it would be helpful for you to address for me, is whether that is, quote, on account of race, religion, nationality, or most particularly here, membership in a particular social group. That's the heart of the issue as I see it in this case. And you've got to establish that she was a member of a discernible social group that we recognize as a matter of law, as opposed to she was sadly the victim of violence in a violent place. That isn't enough to meet your burden under the law. I understand, and we believe, Your Honor, that the particular group. I wasn't the attorney at the BIA or the lower court, but I believe that even as it was stated, which is Mexican citizens who have lived in the United States and have family in the United States. It would be cognizable. If we make it a little bit more specific according to the facts. She's not only a Mexican citizen, she's a woman. And the family that she has in the United States, and actually at the time of the events, were US citizens. So not every Mexican person has lived in the United States and has US citizen children, and that is definitely a cognizable group of people in Mexico. It's not as broad as to include every man or woman, but very few of them have ever lived here, and even fewer have US citizen children. Well, you said they didn't have family, that was your test. People that lived in America had family here. How broad do you interpret family? I mean, does it include cousins? Does it include ex-husbands? Does it include adopted children? I mean, your test was family, and that's pretty hard to get a, I don't have a- And I would have been more specific, but the fact of the matter is that if we would stretch it that much, it wouldn't meet what the board has said, or even the Attorney General recently, as to. It would be overly broad, and it would not have enough particularity. But your problem is when you say, okay, we're not including all family. We're only including those that have husbands there, and people who live there more than a couple years. Is there any evidence that in Mexico, people say, well, if you had a cousin there, I wouldn't be discriminating or committing crimes on you. But if you have a husband, I will. Or if you only live there two years, I wouldn't be committing a crime on you, but you're a special social group, that when you've lived there four years, I am going to commit a crime on you. I understand, and I believe that even if we remove the way I try to express it now, that women who have that type of family in the United States, saves even the changes that the Attorney General has made in the most recent case of matter of AB. Because it is, the fact that it is crime itself doesn't disqualify them for asylum. What they have to prove is that if it's not the government, it's somebody or some entity that the government is unable or unwilling to control. I think what Judge Yabel may be getting at is, it's one thing to sort of narrow the class of individuals in this group so that it's not over broad. But you still have to be able to draw a line around those people in that group and say, that's a socially distinct group. Everyone recognizes that group. The Jacksonville Jaguars, right? I mean, you have to be able to say, yeah, everyone recognizes that group. Well, and I believe, obviously, that wasn't part of the record below, but that it is a distinct group of, again, Mexico has millions and millions of citizens as large of, we can argue that the immigration problem is, only a few of them, in the larger sense, come here and even fewer have relatives here. The main problem that I think the case had below is that the way they define the social group, it's kind of circular and defined by the harm. But my belief is that even if we remove the circularity, that Mexican people who are being victims of rape, it could still survive, and as an example, in the matter of AB, in which the Attorney General basically removed the private violence and the criminal aspect of a particular social group, we can use it as an example. The Attorney General is saying domestic violence is not enough for membership in a particular social group because the persecutor is not- Because everybody in that particular region or section of a country may be susceptible to precisely the same problem of rampant violence. Not only that, the husband doesn't beat the wife because she is a Mexican wife subject to domestic violence, but in our case, the persecutors are in fact persecuting her because she lived in the US and has- What would you do with, we've got a case out there, Castillo Arias. And in that case, Arias applied for asylum claiming that he was a refugee with a well-founded fear of persecution. Based on his membership in a particular social group, and the social group was composed of, quote, non-criminal informants who sought to undermine the Cali cartel in Colombia. Very discernible group. Yeah. And far smaller than the group that you're positing here. The BIA concluded that non-criminal informants who worked against the Cali cartel were not cognizable as a social group. Because one, their members were neither united by an immutable or fundamental trait, nor two, were they sufficiently distinctive in the sense of being socially visible or distinct. And he appealed that ruling from the BIA to this court. And we observed, among other things, that one, Congress didn't define the term of what constitutes, quote, a particular social group. And two, said that we must follow the BIA's determination that non-criminal informants working against the Cali cartel are not a distinctive social group under the INA unless their interpretation was unreasonable. That is to say, arbitrary, capricious, or clearly contrary to law. And what our court said was, we join our sister circuits who have deferred to the BIA's Acosta formulation of a particular social group. And not even stopping there, our court went on and said, we also apply Chevron deference to the determination. Specifically about non-criminal informants who worked against the Cali cartel. How do we distinguish it and are we not bound to defer to a reasonable non-arbitrary determination by the BIA here? I'm not sure that it is distinguishable, but not completely distinguishable. Because as a matter of fact, Ms. Perez-Santeno did report this to the authorities. Maybe not as diligently as she could. So she, as a matter of fact, she's a criminal informant. But what we're saying is, in addition to the fact that she was the victim of that criminal activity and she's identified as such. Let me rephrase that. She, I'm losing my, and I'm out of time. That's all right. You take your time. Okay, your honor, is distinguishable from Castillo-Arias because the type of harm is different. And as a matter of fact, she was an informant or she at least denounced that. But her group is different from the group in Castillo-Arias because it is a group recognized in Mexican society. As a matter of fact, Mexico depends on the money that people like Ms. Perez-Santeno and Ms. Perez-Santeno in the US send them, and they know- What you're saying is this group is socially visible in a different way. It's socially visible in a different way, absolutely. That's my point. All right, let me ask just one final question, and then we'll give you your time for rebuttal. There was also an application here to obtain humanitarian asylum under section 1208.13 of the CFR. To do that, you've got to prove that you are a refugee under the act. Is that not right? Yes, your honor. And that requires you to show that the past demonstration of persecution was based on account of a protected, statutorily protected group. It would have to, your honor, I- So the same, the answer to the first question yields the answer to the second? Yes, your honor. She would have- If she's a member of a distinct group, she wins on both. If she's not, she loses on both. More than likely, your honor. That would be your view? Yes. Thanks very much. May it please the court. My name is Evan Schultz. I'm here on behalf of the government. You've made most of the points that I was going to raise in the back and forth of my colleague just now. There's just a few things I'd like to quickly highlight. First of all, I think Judge Marks was absolutely correct when he pointed out the standard of review here, which is substantial evidence. Put bluntly, the question is whether or not the petitioner has put forward arguments to compel reversal of the board. And I think that that really has not been the case here for the reasons that we've just heard. Second, there's been some back and forth here just now about whether the group that was put forward below, whether that group is socially distinct or not. I think we also, in addition to the main thing- Why wouldn't it be socially distinct in the sense of being discernible, not inchoate and unclear to say a Mexican resident who, one, had lived in the United States for a period of time and came home, and two, had family members who lived in the United States at the time and who was targeted on account of that? Why wouldn't that be a discernible, visible social group? That wouldn't be hard for a court to answer the question of the who, the what, or the where, would it? It's not, Your Honor, and I think that's exactly right. What we need to look at is the burden of proof here, which lies squarely on the petitioner. That's true from statute, that's true from regulation, that's true from case law. To give you a few quick citations, if you look at the board's case in MEVG, it makes clear that the burden is on the petitioner. That's true in this court's cases in Antizan, that 707- We all agree the burden, we all accept that the burden is there. The question is whether or not the burden has been sustained or met by defining a group in the manner that I've just defined it. Mexican resident, raped, assaulted, threatened repeatedly, who lived in the United States, returned to Mexico, and continued to have relatives who lived in the United States. Can a court discern, define with some clarity that group? Again, I think that we need to focus on the burden here. I know that you're trying to say that's a separate issue on some level. These are inextricably- No, I'm just asking whether or not they would have met their burden by positing that group. In this case, no, not with the record evidence that they pointed to. If you look at their brief on page 22, they point to three pages in the record to buttress their case. None of those three pages come anywhere close to satisfying the social distinction. I'll get you the three pages in just one moment, Your Honor. So while you're looking, I take your answer to be you're not denying that Judge Marcus might be right, that hypothetically, theoretically, this might be a socially distinct group, but that there's not record evidence in this record to support it. That is possibly one way to put it. I need to put some more thought into that, Judge News. I think that the more accurate way to put it is that the burden was on the petitioner here to show that there was a socially distinct group, and the petitioner here has not met that burden. I think we're saying the same thing. They're very similar. And to his great credit, Mr. Cabrera said the same thing. He said, look, I wasn't a lawyer downstairs. That's right. And I wish the record were more robust than it is. But Judge Marcus is just asking you, is it at least plausible that this might be a socially distinct group? If, I don't know, let's assume there was boatloads of evidence to support the fact that in Mexico, everybody can draw a line around this group. All I can say is it's possible. We need to see the evidence. We need to hear from the witnesses. We need to see the exhibits. We need to get all the sort of winnowing and judging of the evidence that goes on by the agency that didn't take place here. Those three pages, by the way, and these are talked about in the petitioner's brief at 22. There's really just three pages. What would be enough to meet that burden? I'm just trying to get a sense in terms of actual data. Let's just suppose, hypothetically, and I accept that you don't have anything like this in this case. But let's just suppose a petitioner got on the stand and said, they targeted me on account of my membership in this social group. After all, it's Congress that used the term social group. Yes, Your Honor. But it has to be a particular social group. And here's what happened. I lived here, I moved to the United States, my family lived there, and then I came home. And they targeted me for particular violence here on account of that where I lived and where my family lived and where I had traveled to and then I returned home. And moreover, here are five other people in the same town who were targeted in the same way on account of the same reason. Would that be enough proof? It might be, Your Honor. And again, there's no hard and fast rules here. No, I understand that. In some situations, the mere testimony- I'm just trying to wrap my head around what kind of proof would be enough to make this a distinct social group. So again, I'm treading on thin ice here because we're already off into the land of hypotheticals as you've- Well, you're there because I've asked. And I appreciate that. In some cases, I've seen as maybe the best way to answer that question. Sometimes, mere testimony is enough. Often, the courts can look to the State Department reports, which can talk about social conditions in a given country. There's also, I've seen cases where sometimes experts, PhDs have been brought in to testify about the social distinction of groups in a given country or in a given case. None of these is necessary, by the way, Your Honor. Again, this is why it always comes back to the burden of proof in that case. Okay, so let's go back to this case. What was put in and why was it insufficient? If you accept the proposition that it's possible that I could define a particular social group to include those people who were persecuted in a particular region of Mexico, physically assaulted, raped, whatever, on account of having lived in the United States and then returned home and had relatives who lived in the United States. I think that goes a bit further than I conceded, Your Honor. What I'm saying is, in some case, in some country, it might be possible. I don't know. I didn't say that- Okay, so why is it no, so you're saying two things then, going back to the question that Judge Newsome was asking you. You're saying, one, as a matter of law, this isn't a distinct group, and two, they haven't come close to proving it, even if it otherwise was. I think that's what Judge Newsome phrased it in terms of those two elements. You're not saying that, what are you saying that's different from that? What I'm saying is that- I just want to understand the government's position. And I'm trying, Your Honor, what I'm trying to say is that that inquiry is bound together. The question of whether or not the particular social groups exists is not an abstract question that takes place on a platonic level. It takes place in the context of an adversarial hearing where the burden rests squarely and solely on the shoulders of the petitioner. So I can't say that there is a group out there. If you look at the- So tell me, simply put, why the proofs here were insufficient. Sure, so if you look at page 22 of the petitioner's brief, he cites the three pages of the record as basically the entire record evidence that they look at. Pages 203, pages 206, and pages 221. If you look at page 203, it actually talks about organized criminal groups that were killing and intimidating citizens, migrants, journalists, and human rights defenders. That's a broad swath. That's neither particular nor socially distinct. If you move to the next page that they cite, it's 206. It refers to, quote, serious problems for persons at all socioeconomic levels, end quote. And then three, if you look at page 221, there is discussion about rape and domestic violence and problems facing women, but again, that is not the group that was defined here. The group that was defined here was much broader than that. Are those cites to the state report, the state? These are the citations to the administrative record. And what is that? That is the State Department report. That is the State Department record that all these, because they didn't have any witness, no expert or anybody. That's right, that's the State Department report. So this is all from the State Department report? Yes, Your Honor. The annual report that the State Department puts out. That's correct. There's one other bit of evidence that they cite. I wish I had the page handy. I don't, but it's in their brief and where they say that she acknowledged that at some point she was told that she was. She was told that she was considered to be wealthy because her husband worked in the United States. And that may well be true. That has nothing to do with whether or not there's a group of such people who are viewed as socially distinct in Mexico. Those four pieces of evidence, the three pages I just cited, plus that one additional quote from the end of her testimony, that's all. That's all they have. That's not enough. As a platonic, ideal, objective question, whether such a group exists, that's counting angels on a pinhead, Your Honor. What we're looking at here is whether or not they've met their burden, and more specifically, whether or not there is a compelling reason here before this court to overturn what the board did. And the answer to that, Your Honors, is no. You would be satisfied if we addressed this case strictly on the question of quantum of proof? Well, yes, and I suppose the way to look at it is because they didn't meet the burden of proof, therefore they can't show their social distinction, because of no social distinction, the dominoes keep on falling until you get to the point. And she had a lawyer during that time? Yes, Your Honor. She had a lawyer before the board. You would be, it would be a sufficient, if we were looking for a narrow ruling, to just predicate it on proof in a case where the petitioner had a lawyer at the time? That's one way to phrase it, Your Honor. There's many flaws in the petitioner's brief here, in the petitioner's case before this court. The last point- Putting slightly differently, your position is they've got to show this, whatever group they're referring to, was a distinctive social group, and they failed to do it. They failed to do it because all they did was reference victims of organized crime much more generally, and victims of rape, and victims of violent crime at all levels of the social ladder. And whatever else that is, when you add it up, it's not distinct. Simple as that. More or less, I think the way that you- Okay, what's the less? Help me. Well, you- I'm just trying to find out what I'm missing. You mentioned rape, that wasn't part of the group that they defined. Right. That's my quibble. Okay. Your Honor, you mentioned before just a couple of small points, the case, I didn't catch the full name, but where you were just reading to- Estelio, yeah. You talked about social- Estelio areas, yeah. I just want to make sure, I'm sure this court knows from the brief, the more updated version is MEVG, which this court has essentially adopted, and it's Gonzales' case. I just want to point your attention to that. On the final point, which is humanitarian asylum, I think that the key situation is precisely, as you summarized it, you do need to, the petitioner does need to show that the person is a refugee, that there is on a- The answer to one dictates the answer to the other. That's right, and I think that if you look at the LS case from the board at page 710, it says that quite explicitly. I think there's agreement. It sounds to me like there's agreement on that question. Yes, Your Honors. Unless Your Honors have additional questions, the government rests. Thank you very much. Thank you. Thank you, Your Honors. Mr. Cabrera, you've reserved five minutes. Thank you. But you might want to begin where your colleague left off. What proof did you put in here to establish her membership in a visible, distinctive social group? Okay, and like most cases that go through the Immigration Court and the Board of Immigration Appeals, the most important piece of evidence is the petitioner's, the alien's testimony. And the alien's testimony, which is part of the record, details all that background. And that testimony was considered credible by the immigration judge and by the board. As to the collateral evidence, like the US Department of State country reports, which obviously leaves to be desired. But there's also two Amnesty International reports at pages 241 and 250 of the record, which also mention this type of thing. But they're not there to prove the existence of the group. The existence of the group is going to have to be determined by either the immigration judge, the board, or this honorable court on a case-by-case basis. I believe that the fact of the matter, when this court reviews the record and hears the testimony, combined with what the Department of State says is the condition in Mexico, and Amnesty International says is the condition in Mexico, that's enough to prove that it constitutes a particular social group. And once she's done that, it's a little bit of a downhill. What is it about the conditions in Mexico that yield a conclusion that there's a distinctive social group here? The petitioner talked during the testimony about corruption, and the country reports mention corruption. So she cannot prove- Let's accept that that's true, that a region of Mexico is pervasively corrupt. The cops are bought, the courts are bought. Let's just accept all of that as true. Does that mean that everyone who lives within the geography of that area would be a member of a socially distinctive group and entitled to asylum on those grounds? No, no, absolutely not. But the fact of the matter is, and that's why we will case by case, not all of them are going to have the particular experience of having lived in the US, of having a husband in the United States, of having three US citizen children. And again, as I said in my prior turn, it is socially, these people are socially distinct in Mexico. Actually, that's all the president can talk about, you know? People that they come here, they live here, they go back, they send their money back. It's so socially distinct that honorable President Trump cannot stop talking about it. We all know who they are. We see them in the news. To say that this group of people are not a socially distinct group, it's a fallacy. And once we acknowledge that, this lady, for that particular reason, was subject to persecution. The treatment that she got, I believe it's conclusively persecution. I don't want to, I want to- Let me ask the question this way, just in one line. Other than her testimony, and the references to pages 203, 206, and 221, organized crime, serious problems for personnel at all social levels, etc. And her testimony, is there any other proof in this record that I would find to establish membership, not only in a distinctive social group, but to compel the conclusion, to use our terminology, that the determination by the ALJ was wrong? You're not going to find additional evidence, you're not, the record- Beyond what we've just cited, that's- The record is 300 pages. It's either sufficient or not, but that's it. Yeah. Okay. I wanted to use my last seconds, because it was mentioned that we are in an adversarial setting. And I think it's important for the court to consider the fact that in what's supposed to be an adversarial setting, the attorney for the government said that they would not oppose to grant a humanitarian asylum if the court found them credible upon the rape. We don't have anything on the record to say what was in Mr. Yamada's mind when he made the offering. But the only reason why this lady doesn't have a humanitarian asylum today is because the impartial adjudicator said that it couldn't happen because of nexus, which obviously, we don't know if the judge meant nexus at the beginning of the equation or at the end of the equation. But we know for a fact that at the end of the equation- I thought, just let me ask one final question of you. I thought that your position was that your client and her daughter were persecuted on account of membership in a particular social group. And that particular social group, quote, was defined as Mexican citizens targeted by criminal groups. Because they have been in the United States and they have families in the United States that can't get protection from the government. There's no reference to rape in particular. This is the definition. Mexico's citizens targeted by criminal groups because they were in the United States. I understand. Do I have that right? I just want to know. Yes, yes, absolutely right. If I may. Sure. What I'm saying is that we don't know what was in their mind of the trial attorney making the offer. Or even in the immigration judge minds when they said that it couldn't be done by lack of nexus. But if we're in an adversarial proceeding and the other government offers me a humanitarian asylum, that should be it if I'm in front of an impartial adjudicator. I'm not supposed to be litigating against DHS and the Department of Justice at the time. I understand. Thank you very much. Thank you, Your Honor. Thank you, counsel. Sir, if I may, I understand if you're applying or not. They are not. I understand. I understand fully. Thank you. This court will be adjourned according to the usual order.